OPINION
{¶ 1} This is an appeal of eight separate judgment entries issued by the Mahoning County Court of Common Pleas, Probate Division. The eight cases involve decedents' estates that received wrongful death settlements arising from asbestos product liability lawsuits. In each of the eight cases, attorneys from the Pittsburgh law firm of Goldberg, Persky, Jennings White (hereinafter "GPJW") requested the probate court's approval of attorney's fees and expenses for wrongful death asbestosis claims that the firm had initiated and attempted to settle, and in each case the court reduced the fee request due to GPJW's alleged failure to timely deposit the proposed settlement proceeds into approved estate accounts in Mahoning County. The trial court also reduced counsel's request for expenses because the expenses were not itemized and documented. Although the probate court is afforded wide discretion in approving attorney's fees, we hold that the court acted arbitrarily by sanctioning GPJW without apparent authority or rationale. The probate court's reduction of claimed photocopying and postage expenses, however, is supported by the record due to GPJW's failure to substantiate those expenses with receipts or other evidence. The eight judgment entries are reversed and judgment is entered in favor of GPJW with respect to the penalties deducted from GPJW's attorney's fees.
 {¶ 2} No Appellee's brief was filed in these appeals, and this Court may, "accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C).
 {¶ 3} GPJW has prepared an excellent summary of the eight cases involved in this appeal. The cases are all similar in that GPJW began representing the decedents for asbestosis claims prior to their deaths, and continued attempting to represent the wrongful death beneficiaries after their deaths. GPJW was involved in litigating the asbestosis claims long before the probate court became involved. Potential settlements were reached with a wide range of defendants. In all cases the probate court was, or should have been, aware of pending wrongful death claims due to asbestos exposure, based on filings with the court. At some point the probate court became dissatisfied with the information the court was receiving concerning the wrongful death claims that were being processed. The probate court proposed new local rules in the summer of 2001 to deal with this problem, including Loc.R. 70.4, 70.5, and 70.6. These rules became effective on March 14, 2002. Loc.R. 70.4 deals with general filing requirements for wrongful death and survival claims. Loc.R. 70.5 deals with wrongful death claims involving product liability and complex litigation, such as class action claims. Loc.R. 70.6 deals with the methods for correcting and amending the filings for product liability wrongful death claims.
 {¶ 4} The eight consolidated cases in this appeal all present more or less the same factual and procedural scenario. In each case the personal representative of the estate filed one or more documents with the probate court indicating that there were wrongful death claims pending. These claims were all based on the fact that the decedent had developed asbestosis during his lifetime. In each case, the probate court held a hearing in order to approve the settlements GPJW negotiated in the wrongful death suits, and to approve attorney's fees and litigation expenses. In every case, the court determined that a 33% contingency fee was reasonable, and that penalties would be deducted from those fees due to GPJW's failure to deposit the proposed settlement funds into an appropriate Mahoning County bank within 30 to 90 days.
 {¶ 5} On February 4, 2004, we ordered that one single opinion would issue for all eight appeals, and that the case should be captioned "In the Matter of The Estate of Samuel A. Traylor, et al." The individual case numbers of each appeal would continue to be used for filing purposes. Also on February 4, 2004, we granted a partial stay of execution of the probate court's orders of distribution, and we ordered that the amount in controversy in each appeal be held in escrow pending resolution of this appeal.
 {¶ 6} GPJW's sole assignment of error asserts:
 {¶ 7} "The Probate Court erred by assessing penalty interest against Appellant's attorney's fees."
 {¶ 8} We point out from the start that this is not the first time GPJW has asked this Court to resolve a dispute over attorney's fees involving the Mahoning County Court of Common Pleas, Probate Division. In the recent case of In re Campbell,
7th Dist. Nos. 02 CA 186, 02 CA 187, 2003-Ohio-7040 (December 15, 2003), this Court reversed the probate court for arbitrarily and drastically reducing attorney's fees without giving a sufficient reason and without conducting an evidentiary hearing. Id. at ¶ 37.
 {¶ 9} Even more recently, this Court overturned the probate court's decision to reduce GPJW's attorney's fees by 10% in another wrongful death case involving asbestosis. In reCovington, 7th Dist. No. 03 MA 98, 2004-Ohio-3639 (decided on June 24, 2004). We held that the probate court arbitrarily and unreasonably reduced GPJW's attorney's fees by retroactively applying newly adopted Loc.R. 70.6 (which contains various requirements for reporting on the settlement of wrongful death claims). Id. at ¶ 16.
 {¶ 10} It does appear that In re Campbell and In reCovington involved slightly different issues than those raised in the cases now under review. Both prior appeals questioned the trial court's determination of reasonable attorney's fees, and in both cases we did not find a sufficient basis in the record to sustain the probate court's determination as to the reasonableness of the attorney's fees. In the instant cases, GPJW is challenging the probate court's imposition of a sanction against the reasonable attorney's fees actually awarded. The reasonableness of the initial fee award does not appear to be in dispute in this appeal. Despite the subtle difference in the arguments presented in the instant appeal, we are guided by our previous analysis in In re Campbell and In re Covington.
 {¶ 11} GPJW has not presented any arguments concerning the trial court's decision to partially deny reimbursement for various litigation expenses, although GPJW initially indicated that this issue would be raised on appeal. Concerning the probate court's decision to impose sanctions, GPJW has set forth five basic arguments. Before addressing these arguments, we need to establish our standard of review in this appeal. We are well aware that a probate court's determination of the reasonableness of attorney's fees is reviewed for abuse of discretion. In reGuardianship of Patrick (1991), 66 Ohio App.3d 415, 416,584 N.E.2d 86. This appeal, though, challenges the penalties that the probate court imposed upon GPJW's fees, and does not challenge whether the attorney's fees themselves were reasonable. In fact, the probate court determined that contingency fees of 33% were reasonable, and awarded this amount to GPJW in each case currently on appeal. The probate court's sanction was imposed against this 33% contingency fee.
 {¶ 12} It is clear from reading the individual judgment entries in each of the eight appeals that the probate court intended to punish GPJW for a variety of perceived violations of local court rules, Ohio Rules of Superintendence, and rules of professional ethics governing attorneys. Although the probate court lists many supposed rule violations, the 10% penalty specifically at issue in this appeal solely relates to GPJW's failure to timely deposit proposed settlement funds into a designated bank account in Mahoning County within 30 (or in some cases, 90) days of receipt. The court imposed a blanket 10% penalty, per annum, against all attorney's fees that resulted from proposed settlement proceeds that were not so transferred.
 {¶ 13} The rule that GPJW allegedly violated was Loc.R. 70.5(C)(1), which states:
 {¶ 14} "Whenever any sums are actually paid in satisfaction of each proposed settlement, or any other settlement related to the particular estate's claim, the entire gross amount paid by each settling defendant must immediately be deposited into one wholly restricted, interest bearing account in the name of the estate and additionally identified as `f.b.o. Wrongful Death/Survival Beneficiaries;' * * *."
 {¶ 15} Whether or not the probate court had the authority to impose monetary sanctions pursuant to Loc.R. 70.5(C)(1) is a legal question that is reviewed de novo on appeal. ClevelandElec. Illum. Co. v. Pub. Util. Comm. (1996), 76 Ohio St.3d 521,523, 668 N.E.2d 889. If the probate court had the authority to impose monetary sanctions, the actual imposition of sanctions is reviewed for abuse of discretion. See, e.g., State ex rel. Fantv. Sykes (1987), 29 Ohio St.3d 65, 65, 29 OBR 446, 505 N.E.2d 966 (regarding pretrial discovery sanctions under Civ.R. 11 and 37); Ron Scheiderer Assoc. v. London, (1998),81 Ohio St.3d 94,97,689 N.E.2d 552 (regarding sanctions for frivolous conduct by an attorney).
 {¶ 16} Abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. An abuse of discretion refers to a result that is, "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v.Jenkins (1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264.
 {¶ 17} GPJW's first argument asserts that the probate court was not permitted to retroactively impose local rules of court for behavior which occurred prior to the effective date of the new rules. It appears that GPJW is partially correct, because the local rule that GPJW allegedly violated did not become effective until March 14, 2002. At least some of the proposed settlement funds were collected prior to that date. In keeping with our reasoning in In re Covington, we hold that the probate court was not permitted to retroactively impose sanctions under the authority of Loc.R. 70, et seq., prior to the effective date of those rules.
 {¶ 18} Furthermore, we have not found an explicit 30-day or 90-day deposit rule in the local rules of the probate court. If there is such a local rule, it must be an oral or unwritten rule. We have no means of gleaning from the record when GPJW received notice that this unwritten rule would be enforced. Loc.R. 70.5(C)(1), which is the only rule that apparently was invoked to justify the 10% penalty, certainly does not provide for such sanctions if litigation counsel fails to promptly deposit proposed settlement funds in an authorized bank in Mahoning County. Although the probate court may have believed there was an unwritten rule governing sanctions, there is nothing in the record revealing how counsel was supposed to learn about this oral rule, other than at the time of sanction.
 {¶ 19} The probate court's actions are complicated by the fact that there is no provision in the Rules of Superintendence for purely oral local rules. Sup.R. 5(A)(1) does allow courts to adopt written local rules of practice that do not conflict with other rules established by the Ohio Supreme Court. Sup.R. 5 also provides for a hearing and appropriate notice of the rule, and filing the rule with the Supreme Court. Obviously, if the rules must be filed with the Supreme Court, they must be written.
 {¶ 20} We are aware that the probate court has the authority under R.C. § 2150.52 to impose a 10% statutory penalty in a concealment action. A concealment action is a summary proceeding in which the probate court attempts to determine whether estate assets were concealed, converted, embezzled, or conveyed away.State ex rel. Goldberg v. Mahoning Cty. Probate Court (2001),93 Ohio St.3d 160, 163, 753 N.E.2d 192. There is no indication, though, that any party filed a concealment complaint pursuant to R.C. § 2109.50, or that any proceedings resembling a concealment action took place.
 {¶ 21} We note that we have no opposing arguments from Appellee. We must find GPJW's first argument to be persuasive.
 {¶ 22} GPJW's second argument contends that the probate court imposed sanctions for failure to transfer settlement funds even though the court had not yet approved of the settlements. GPJW argues that wrongful death settlement proceeds do not belong to the decedents' estates, but rather, to the persons designated by the wrongful death statutes. GPJW argues that, regardless of local court rules, it would have been improper to deposit the proposed settlement funds into estate accounts without further direction from the probate court concerning the status and proposed distribution of those funds.
 {¶ 23} GPJW is correct that wrongful death proceeds do not become part of a decedent's estate. An action for wrongful death is a purely statutory action providing for damages for the beneficiaries as defined by the wrongful death statute, R.C. §2125.01 et seq. The right to bring such an action is conferred only by statute and is the only civil remedy available to compensate surviving beneficiaries. Keaton v. Ribbeck (1979),58 Ohio St.2d 443, 12 O.O.3d 375, 391 N.E.2d 307. Wrongful death claims are brought in the name of the personal representative of a decedent's estate, "for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent[.]" R.C. §2125.02(A). Where the personal representative is not a beneficiary, he is a nominal party. In re Estate of Ross
(1989), 65 Ohio App.3d 395, 583 N.E.2d 1379.
 {¶ 24} "Lower courts have reiterated that funds recovered by a personal representative in a wrongful death action are intended for the exclusive benefit of the statutory beneficiaries and arenot an asset of the decedent's estate." (Emphasis in original.)State ex rel. Goldberg, supra, 93 Ohio St.3d at 163,753 N.E.2d 192.
 {¶ 25} Pursuant to R.C. § 2125.02(C), the probate court must approve of settlements reached with wrongful death defendants:
 {¶ 26} "A personal representative appointed in this state, with the consent of the court making the appointment and at any time before or after the commencement of an action for wrongful death, may settle with the defendant the amount to be paid."
 {¶ 27} It is clear from the record that the probate court presented GPJW with a "Catch-22" scenario. The court reprimanded GPJW for attempting to enter into settlements without prior court approval. On the other hand, the court also criticized GPJW for failing to immediately collect and transfer all proposed settlement funds to a specific estate account in Mahoning County designated by the court, even though there was no approved settlement when the money was received. Thus, GPJW was being sanctioned for both failing to treat the collected funds as settlement funds, and for failing to wait for court approval before entering into settlement agreements.
 {¶ 28} Obviously there are potential problems with the way GPJW handled the settlement procedure in these appeals. The probate court was obviously concerned that GPJW may attempt to enter into settlements without the knowledge or approval of the client. The probate court's concern is partially addressed in Ohio's Code of Professional Responsibility, DR 9-102, which states:
 {¶ 29} "(B) A lawyer shall:
 {¶ 30} "(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
 {¶ 31} "* * *
 {¶ 32} "(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
 {¶ 33} A violation of DR 9-102 is a matter under the exclusive jurisdiction of the Ohio Supreme Court to resolve. Section 2(B)(1)(g), Article IV of the Ohio Constitution vests the Supreme Court with exclusive authority over, "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." The Ohio Supreme Court, in Disciplinary Counsel v. Coleman (2000),88 Ohio St.3d 155,157,724 N.E.2d 402, held that: "Section 2(B)(1)(g), ArticleIV of the Ohio Constitution gives the Supreme Court power over all matters relating to the practice of law." The Board of Commissioners on Grievances and Discipline of the Supreme Court has exclusive authority to recommend disciplinary actions to the court against licensed attorneys. Gov.Bar R. V(2).
 {¶ 34} There is nothing in the record indicating what, if any, authority the probate court has relied upon to usurp the exclusive jurisdiction of the Ohio Supreme Court for the perceived violation of DR 9-102, or a similar local rule of the probate court. There is certainly nothing in Sup.R. 5 that would allow a probate court to impose monetary sanctions on an attorney for violating a specific rule in the Ohio Code of Professional Responsibility, or a similar local court rule. Any further discussion of this issue on our part would be mere speculation, particularly since we have no arguments from Appellee to illuminate our analysis.
 {¶ 35} For all these reasons, we also find merit in GPJW's second argument in this appeal.
 {¶ 36} GPJW's third argument asserts that the probate court had previously accepted GPJW's practice of depositing proposed settlement funds in Pittsburgh area banks, and did not give GPJW clear direction that funds should only be deposited in approved banks in Mahoning County, Ohio. GPJW appears to be correct, in that there are no journal entries or other indications from the probate court that instructed GPJW to change its procedures for depositing proposed settlement funds, except for the final judgments that imposed the sanctions. It would appear that the probate court relied solely on the notice provided by the local rules themselves to inform GPJW of the change in the probate court's procedure. As noted above, though, there is no local rule imposing a 10% penalty for failure to deposit proposed settlement funds in a Mahoning County bank within 30 or 90 days of receipt. The record does not reflect any notice given to GPJW concerning this apparently oral rule or that this rule would be strictly enforced, and therefore, GPJW's third argument also has merit.
 {¶ 37} GPJW's fourth argument is that the probate court should not be permitted to impose such a severe sanction except upon a finding of bad faith or willful noncompliance with court orders. GPJW also attempts to incorporate the doctrine of separation of powers into this part of its argument. GPJW's fifth argument is that it was not aware that the probate court would interpret its new local rules as including an unwritten rule requiring settlement funds to be transferred within 30 or 90 days. These two arguments are not developed to the degree necessary for this Court to present a relevant response, and we therefore find they have no merit.
 {¶ 38} Based on the reasons listed above, we sustain GPJW's assignment of error and we reverse the judgment entries in the eight case under review in this consolidated appeal. The following amounts that have been deducted from GPJW's attorney's fees, which are being held in escrow pursuant to our order of February 4, 2004, are hereby awarded to GPJW:
 {¶ 39} In Probate Court Case No. 1999 ES 793: $362.96
 {¶ 40} In Probate Court Case No. 2000 ES 161: $32.00
 {¶ 41} In Probate Court Case No. 2000 ES 900 $177.82
 {¶ 42} In Probate Court Case No. 1999 ES 640 $596.81
 {¶ 43} In Probate Court Case No. 2000 ES 800 $338.79
 {¶ 44} In Probate Court Case No. 2000 ES 225 $625.53
 {¶ 45} In Probate Court Case No. 1997 ES 41 $1,074.55
 {¶ 46} In Probate Court Case No. 2000 ES 289 $420.31
 {¶ 47} We enter a total judgment in favor of Appellant Goldberg, Persky, Jennings White in the amount of $3,628.77. We also vacate our Journal Entry of February 4, 2004, which ordered certain funds to be held in escrow in each of the eight cases on appeal.
Donofrio, J., concurs.
DeGenaro, J., concurs.